# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**STEWART TITLE GUARANTY COMPANY,**

        Plaintiff,

v.                                             Case No: 6:17-cv-562-Orl-31DCI

**THE MACHADO FAMILY LIMITED PARTNERSHIP NO. 1,**

        Defendant.

## ORDER

This matter comes before the Court on the Motion to Dismiss Bad Faith Claims (Doc. 25) filed by the Plaintiff, Stewart Title Guaranty Company (henceforth, "Stewart Title"), and the response in opposition (Doc. 29) filed by the Defendant, The Machado Family Limited Partnership No. 1 (the "Machado Partnership").

### I. Background

According to the allegations of the Defendant's Answer and Counterclaim (Doc. 22), which are accepted in pertinent part as true for purposes of resolving the instant motion, the Machado Partnership is the assignee of a $1.4 million lenders title policy (henceforth, the "Policy") issued by Stewart Title in connection with a purchase of roughly 1,300 acres of land (henceforth, the "Property") in Central Florida by Joseph and Marsha O'Berry. (Doc. 22 at 8). The Machado Partnership is also the assignee of a mortgage on the Property. (Doc. 22 at 10). The legal description of the Property included in the mortgage contained errors. (Doc. 22 at 9).

In 2011, the Machado Partnership sued the O'Berrys to foreclose on the mortgage; in 2012, while that suit was still pending, the O'Berrys filed for bankruptcy protection. (Doc. 22 at

10). In late 2013, the Bankruptcy Court approved a settlement requiring the O'Berrys to transfer the Property to the Machado Partnership. (Doc. 22 at 10). When the Machado Partnership attempted to prepare a warranty deed for the transfer, it discovered the errors in the legal description of the Property included in the mortgage. (Doc. 22 at 11). It also learned that the original lender had filed a claim with Stewart on behalf of the Machado Partnership. (Doc. 22 at 11). The Machado Partnership contacted Stewart and informed the company (1) that the errors in the legal description were blocking the transfer of the Property, and (2) that it was suffering losses that would continue to increase until the property was transferred. (Doc. 22 at 11-12). Stewart's response consisted of a handful of emails and a few telephone calls over the next three months, leading the Machado Partnership to believe the insurer had abandoned it. (Doc. 22 at 12).

Because of the problem with the legal description of the Property, the Machado Partnership was forced to engage in additional months of litigation in Bankruptcy Court with the O'Berrys. (The O'Berrys contended that the legal description included in the warranty deed prepared by the Machado Partnership encompassed more land than the couple was required to transfer under the settlement agreement. (Doc. 22 at 13).) Throughout this litigation, Stewart would send the Machado Partnership emails to "check in" on the status of litigation, but did nothing else. (Doc. 22 at 13-14).

In September 2015, the Bankruptcy Court ruled in favor of the Machado Partnership. Subsequently, Stewart agreed to pay (and did pay) the approximately $200,000 in attorneys' fees the Machado Partnership had incurred defending the title to the Property. (Doc. 22 at 15). However, despite negotiations and a January 17, 2017 mediation, the parties were unable to come to an agreement regarding additional damages the Machado Partnership contends it suffered

during the litigation, such as diminution of value of the Property resulting from timber taken by the O'Berrys.

On January 30, 2017, Stewart filed the instant suit, seeking a declaration that its payment of the Machado Partnership's attorney fees had satisfied its obligations under the policy. On April 20, 2017, the Machado Partnership filed its counterclaim, asserting claims for breach of contract (Count I) and statutory bad faith (Count II). By way of the instant motion, Stewart seeks dismissal of Count II.

**II.     Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory

allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   Analysis

The Machado Partnership asserts its bad faith claim pursuant to Fla. Stat. § 624.155(1)(b)(1), which provides in pertinent part that

> (1) Any person may bring a civil action against an insurer when such person is damaged:
>
> …
>
> (b) By the commission of any of the following acts by the insurer:
>
> 1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.

It is well settled under Florida law that a Section 624.155 bad faith claim does not accrue against an insurer until there has been a final determination as to both the existence of liability and the extent of damages. *See, e.g., Progressive Select Ins. Co. v. Shockley*, 951 So. 2d 20, 20 (Fla. 4th DCA 2007). In the words of the Florida Supreme Court,

> [A]n insured's underlying first-party action for insurance benefits
> against the insurer necessarily must be resolved favorably to the
> insured before the cause of action for bad faith in settlement
> negotiations can accrue.

*Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). No final determination as to liability or damages has occurred in this matter, and Stewart argues that the bad faith claim must therefore be dismissed (or at least abated) as premature.

The Machado Partnership argues that there is no issue as to liability because Stewart (1) is estopped from asserting any defenses to coverage and (2) has already paid its attorney fees incurred in defending title to the Property. (Doc. 29 at 3). As for damages, the Machado Partnership complains that Stewart "has not cited a single authoritative case supporting its argument for bifurcating [the contract claim from the bad faith claim] that is factually similar to this case." (Doc. 29 at 4). Continuing, the Defendant/Counterclaimant contends that

> The Machado Partnership cannot locate a single case where the facts
> are similar in that the insurer fails to take action on a claim, never
> notifies its insured of a coverage determination and then abandons
> the insured in the midst of litigation challenging the very thing
> insured, i.e. the status of title.

(Doc. 29 at 4).

These arguments are not persuasive. The Machado Partnership may eventually prevail on its contentions regarding estoppel, but until that happens, Stewart remains free to argue that the Policy did not require it to take over the litigation involving the Property and does not cover the damages the Machado Partnership now claims. Thus, liability remains at issue. As for damages, while the Machado Partnership has identified some differences between the cases cited by Stewart and the situation described in its counterclaim, it has not even offered an argument as to why those differences matter. For example, the Machado Partnership points out that Stewart has not cited to any first-person bad faith cases that involve a title insurance policy. (Doc. 29 at 5). But the

Machado Partnership does not attempt to provide a rationale for treating a bad faith claim against a title insurance company differently than a bad faith claim against, say, an automobile insurance company. And the same holds true for the remainder of the differences pointed out by the Machado Partnership; there is no argument as to how they would overcome the Florida Supreme Court's holding in *Blanchard* that the action for benefits must be resolved in the insured's favor before the bad faith claim can accrue. *Blanchard*, 575 So. 2d at 1291.

Thus, the bad faith claim is premature here. This leaves the question of what to do with it. In the absence of further direction from the Florida Supreme Court, this Court will continue to abate such claims, rather than dismiss them. *See Gianassi v. State Farm Mut. Auto. Ins. Co.*, 60 F.Supp.3d 1267, 1271 (M.D. Fla. 2014).

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss Bad Faith Claims (Doc. 25) is **GRANTED IN PART AND DENIED IN PART**. Count II is hereby **ABATED** pending resolution of the breach of contract claim (Count I). In all other respects, the motion is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 23, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party