# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**STEWART TITLE GUARANTY COMPANY,**

      **Plaintiff,**

**v.**                                                   Case No:   6:17-cv-562-Orl-31DCI

**MACHADO FAMILY LIMITED PARTNERSHIP NO. 1,**

      **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 34) filed by the Plaintiff, Stewart Title Guaranty Company (henceforth, "Stewart Title"), and the Motion for Partial Summary Judgment (Doc. 38) filed by the Defendant, Machado Family Limited Partnership No. 1 ("Machado"), as well as the responses and replies to those motions.

### I. Background

In 2007, CenterState Bank Central Florida, N.A. ("CSB") made a loan to Joseph O'Berry and Marsha O'Berry secured by a mortgage (the "Mortgage") on approximately 1,300 acres they owned in Osceola County (the "O'Berry Property").[1] In connection with the transaction, Stewart Title issued a lenders title insurance policy (the "Policy") to CSB. Both the Mortgage and the

---

[1] Except where noted, the information in this section is taken from the Statement of Undisputed Facts in the Defendant's Motion for Partial Summary Judgment (Doc. 38 at 2-11) or is otherwise undisputed.

Policy contained errors in the legal description of the O'Berry Property. The effect of the errors was that one parcel did not "close".

In 2008, Machado bought the loan and the Mortgage from CSB and became the insured under the Policy. The loan went into default, and in June of 2011 Machado sued the O'Berrys[2] to foreclose the Mortgage. Machado's foreclosure complaint included a count to reform the Mortgage to correct the errors in its legal description. (Doc. 34-1 at 37).

In July 2012, the O'Berrys filed a Chapter 11 bankruptcy petition.[3] After mediation, the O'Berrys entered into a settlement agreement with Machado. Under the terms of the agreement, the O'Berry Property would be put up for sale on December 1, 2012, for no more than six months, with the proceeds going first to pay the O'Berrys' creditors. (Doc. 34-1 at 45-49). If the O'Berry Property failed to sell, the O'Berrys would be required to deed it over to Machado. (Doc. 34-1 at 46).

The O'Berry Property did not sell during the allotted time. The Bankruptcy Court ordered Machado to prepare a warranty deed to transfer the property. Machado did so, but the O'Berrys rejected the deed. Among other things, the O'Berrys argued that (1) the settlement agreement only required them to transfer the portion of the property subject to the Mortgage, and (2) because of the errors in the legal description of the Mortgage, there were approximately 160 acres of their property that was not subject to it, and which they were therefore entitled to keep.

---

[2] At some point before the foreclosure suit was filed, the O'Berrys had transferred the property to 8 Mile Ranch, LLC, which they controlled, and it was this entity that was actually sued by Machado. For the sake of simplicity, however, this opinion will refer to the property as owned by the O'Berrys during the relevant time frame.

[3] Consistent with the previous footnote, the bankruptcy petition was actually filed by 8 Mile Ranch, LLC.

Machado set about trying to get the legal description corrected. It contacted CSB, which in late March 2014 provided some documents about the underlying loan. CSB also provided a copy of a title claim (Doc. 22-8 at 1), dated March 24, 2014, which it had made on the Policy. In the claim, CSB had demanded that Stewart Title pay any costs incurred by the bank related to curing the defect in the Mortgage.[4] (Doc. 22-8 at 1). CSB also informed Stewart Title that Machado, as the current mortgagee, might make a demand pursuant to the Policy. (Doc. 22-8 at 1). The record does not reflect that Machado submitted such a written demand to CSB while the litigation with the O'Berrys was ongoing.[5]

In October 2014, Machado filed a motion in the Bankruptcy Court to compel the O'Berrys to comply with the terms of the settlement agreement. The Bankruptcy Court held an evidentiary hearing on the motion in March 2015. In September 2015, the Bankruptcy Court ruled in favor of Machado on its motion, rejecting the O'Berrys' position and requiring the conveyance of the disputed 160 acres along with the remainder of the O'Berry Property. A month later, Machado recorded the deed to the O'Berry Property. Stewart Title contends, and Machado does not dispute, that the Bankruptcy Court's order and the resulting deed fully cured the problems with the legal description of the Mortgage and the Policy. (Doc. 34 at 6).

Stewart Title also contends, and Machado also does not dispute, that Machado provided its first standalone demand for attorneys' fees to Stewart Title in May 2016. (Doc. 34 at 6). The

---

[4] It appears that CSB was mistaken in submitting the claim, as it was no longer the insured under the Policy.

[5] Machado contends that CSB's claim "comprised a tender of defense of title under the Policy". (Doc. 38 at 3). However, the claim did not mention either Machado's foreclosure action or the ongoing bankruptcy litigation. Moreover, CSB did not request that Stewart Title seek to cure the problems in the legal description, retain independent counsel for itself or for Machado, or take any other specific action.

figure Machado requested – $230,987.06 – included fees incurred in the months after the litigation concluded.  (Doc. 34 at 6).  Stewart Title requested that Machado provide the figure for fees incurred in the curative litigation, only.  On September 27, 2016, Machado provided that figure: $207,243.06.  Within two weeks, Stewart Title tendered that amount to Machado.

Machado however sought to recover fees incurred after the conclusion of the curative litigation, as well as consequential damages incurred while it was pending.  Stewart Title filed the instant action, seeking a declaration that it was not liable for any additional payments pursuant to the Policy.  By way of the instant motion, Stewart Title contends that it is entitled to summary judgment because (1) the title defect has been cured and (2) it fully paid for the litigation needed to do so.  (Doc. 34 at 9).  In its motion for partial summary judgment, Machado argues that Stewart Title breached the Policy by failing to act diligently to cure the errors in the legal description.  (Doc. 38 at 13-14).

## II.    Legal Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III. Analysis**

Section 4(a) of the Policy provides in pertinent part that

> [u]pon written request by the insured … the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy.

(Doc. 1-1 at 4).

Section 4(b) provides that

> [t]he Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in

> its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured.… If the company shall exercise its rights under this paragraph, it shall do so diligently.

(Doc. 1-1 at 4).

Machado contends that Section 4(a) applies to the actions at issue in this case. (Doc. 48 at 13). Stewart Title contends that Section 4(b) applies. (Doc. 34 at 9). However, the Court need not resolve this dispute. Machado's fundamental complaint is that Stewart Title failed to act diligently, something that both Section 4(a) and Section 4(b) require. For present purposes, it does not matter which section Machado relies upon.

Stewart Title argues that because the Bankruptcy Court's determination cured any title problem, Machado has no claim, as a matter of law, for any alleged failure to act diligently. In support, Stewart Title points to the case of *Kahama VI, LLC v. HJH, LLC*, 2016 WL 7104175 (M.D. Fla. Dec. 6, 2016) (Moody, J.). The plaintiff – henceforth, "Kahama" – had sued in federal court to recover unpaid proceeds from a note secured by property. *Id.* at *1. Kahama's state-court foreclosure suit stalled when the county asserted an ownership interest in the underlying property. *Id.* at *1. This resulted in a separate state court suit to quiet title, prosecuted by Kahama's title insurer, Old Republic National Title Insurance Company ("Old Republic"). *Id.* Kahama asserted claims against Old Republic in the federal court suit, arguing that Old Republic breached the title policy by failing to conduct a diligent title search (so as to discover the county's asserted interest) and by failing to diligently prosecute the quiet-title action. *Id.* Kahama's claims against Old Republic were stayed while the quiet-title litigation was completed. Old Republic – representing Kahama's interests – prevailed in the quiet-title action before the Fifth District Court of Appeal, and Kahama was able to foreclose on the property. *Id.*

The federal court then reinstated Kahama's breach claims against Old Republic. *Id.* The policy required that if Old Republic initiated an action to establish title, it had to do so "diligently". *Id.* at *2. Judge Moody noted that the question of whether a title insurer unreasonably delayed or failed to diligently pursue litigation in defense of its insured is ordinarily a question for the fact finder. *Id.* at 6. However, he concluded that because Old Republic was successful in the quiet-title action, Kahama could not assert a lack-of-diligence claim against it:

> [W]hen a policy permits the insured to pursue the litigation to a "final determination," as the policy does here, "the claim only lies once a court speaks, and not before, and not if the court's judgment is favorable." *See Cocoa Properties, Inc. v. Commonwealth Land Title Ins. Co.*, 590 So. 2d 989, 991 (Fla. 2d DCA 1991) (quoting *Lawyers Title Ins. Co. v. Synergism One Corp.*, 572 So. 2d 517, 518 (Fla. 4th DCA 1990)). In Florida, if a final determination by a court cures title defects, the claim is precluded as a matter of law. *See Cocoa Properties*, 590 So. 2d at 991; *Synergism*, 572 So. 2d at 518.

*Kahama* at *6.

In the instant case, the Policy includes the following provision in its "Limitation of Liability" section:

> In the event of any litigation, including litigation by [Stewart Title] or with [Stewart Title's] consent, [Stewart Title] shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(Doc. 1-1 at 5) (emphasis added). Although the title policy at issue in *Kahama* is not before the Court, Machado does not argue that the "final determination" language of that policy differs in any material way from the Policy language quoted *supra*. And Machado does not dispute that the Bankruptcy Court's final determination was favorable and cured any defects.

Machado attempts to distinguish *Kahama* on the grounds that the title insurer there took action on behalf of its insured and established title, while in the instant case "there is no evidence

that Stewart directly or indirectly established title on behalf of Machado, exercised any of its options under Paragraph 6[6] of the Policy and left Machado with a cured title." (Doc. 48 at 10.) But the relevant Policy provision does not require that Stewart Title itself conduct the litigation. It also allows for litigation conducted with the title insurer's "consent." (Doc. 1-1 at 5). Stewart Title had no opportunity to express its consent (or lack thereof) at the outset of this litigation, which had been underway for several years before Stewart Title was notified. But the fact that Stewart Title promptly paid for that litigation is sufficient, for present purposes, to show (at least) implicit consent. Certainly, Machado points to nothing in the record suggesting that Stewart Title refused to go along with the litigation, or even second-guessed it, once it had notice of its existence. Under these circumstances, the Court concludes that the limitation of liability provisions of the Policy apply, and Machado is barred from asserting a lack-of-diligence claim.[7]

---

[6] Paragraph 6 of the Policy gives Stewart Title several options to terminate its liability by, *inter alia*, making payments to the insured. (Doc. 1-1 at 4).

[7] Moreover, even assuming *arguendo* that Machado was entitled to present such a claim, Stewart would still be entitled to summary judgment. Machado has presented no evidence of any lack of diligence on the part of Stewart Title. Machado continues to complain that it, rather than its title insurer, conducted the curative litigation. Though this is true, it misses the point. Machado does not even argue that it ever asked its title insurer to take over the case, or to start paying its counsel on an ongoing basis, or to do anything else that Stewart Title then failed to do, much less that it failed to do with diligence, thereby causing harm to Machado.

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 34) filed by the Plaintiff, Stewart Title Guaranty Company, is **GRANTED**. And it is further

**ORDERED** that the Motion for Partial Summary Judgment (Doc. 38) filed by the Defendant, Machado Family Limited Partnership No. 1, is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 19, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party